# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 East 42nd Street, 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                     Facsimile: (212) 317-1620

——————

gnaydenskiy@faillacelaw.com

**BY ECF**

**BY EMAIL**
Honorable J. Paul Oetken
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re:  Ibarra Perez et al v. 149 Street Food Corp. et al;
18-cv-03560 (JPO)

Your Honor:

This office represents Plaintiffs in the above referenced matter.  The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the Agreement is attached hereto as Exhibit A.  We therefore ask the Court to approve the settlement, pursuant to *Cheeks v*. *Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

## BACKGROUND

Plaintiffs filed their Complaint against Defendants alleging claims for unpaid overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.*, and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

## SETTLEMENT TERMS

After reviewing records provided by Defendants, Plaintiffs would be entitled to back wages of approximately $17,873.34, $17,873.34 liquidated damages, $15,408.00 for spread of hours pay,

and $20,000 for NYLL 195 violations as their worst case scenario. In order to avoid the legal and factual risks of protracted litigation, the parties have agreed to settle this action for the total sum of $62,000.  A copy of Plaintiffs' worst case scenario breaking down the amount Plaintiffs' are owed is attached hereto as Exhibit C.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were contested factual and legal disputes. Additionally, the Defendants have represented that the corporation is no longer in operation and finances are scarce. Therefore, Plaintiffs believe the settlement is reasonable because of the inherent litigation and collection risk.

## ATTORNEYS' FEES

Plaintiffs' counsel will receive $21,120 which consists of $20,440 attorneys fees (one third of costs minus the $62,000 settlement) plus $680 in costs.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit.  Counsel's lodestar is $4,505

in attorneys' fees and $680 in costs[1], making the fee counsel will receive under the agreement reasonable in light of their lodestar. The following is a summation of the backgrounds and rates of the attorneys who worked on this matter:

i.      Michael Faillace's work is billed at the rate of $450 per hour, which is his standard billing rate for matters paid on an hourly basis. Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. Faillace's work is indicated by the initials "MF."

ii.      Haleigh Amant was an associate at Michael Faillace & Associates, P.C. Since graduating law school in 2017 from the George Washington University Law school, she has been practicing strictly employment law and representing employees in wage and hour disputes. Her work is billed at $250 per hour and indicated by the initials "HA."

ii.      Gennadiy Naydenskiy is a 2013 graduate of the State University of New York at Buffalo Law School, admitted to the New Jersey Bar and the United States District Court, District of New Jersey, in December 2013, the New York Bar in February 2014, the United States District Court, Southern District of New York in June 2014, and the United States District Court, Eastern District of New York in July 2014. Prior to joining Michael Faillace and Associates, P.C. in August 2018, Gennadiy Naydenskiy was a solo practitioner from October 2014, focusing primarily on FLSA wage and hour cases. Prior to founding his solo practice, Gennadiy Naydenskiy was an associate for Harrison, Harrison, and Associates a boutique law firm that focus most of their practice on FLSA wage and hour individual, multi-plaintiff, collective and class actions. Additionally, prior to being an associate, Gennadiy Naydenskiy was a law clerk for Harrison, Harrison, and Associates from May 2012. My regular billing rate of $350 per hour is reflected in Exhibit C with my initials "GN."[2]

These rates are reasonable given the experience of the attorneys in wage and hour matters, and their performance in this case. *See Perez v. Platinum Plaza 400 Cleaners, Inc.,* Index No. 12-

---

[1] A copy of Plaintiff's counsel's billing record is attached as "Exhibit B."

[2] Additionally, Paralegal time marked as "PL" is billed at $100 an hour.

cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Michael Faillace and one of his associates at this firm, Joshua Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case").

In full consideration of the issues presented in both *Cheeks* and *Wolinsky,* we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved.

Thank you for your consideration in this matter.

Respectfully Submitted,

/s/ Gennadiy Naydenskiy

Gennadiy Naydenskiy

Encls.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

HILDEBERTO IBARRA PEREZ (A/K/A ALBERTO
IBARRA) and SANTIAGO HERNANDEZ,
*individually and on behalf of others similarly situated,*

                                        Plaintiffs,

                    -against-

149 STREET FOOD CORP. (D/B/A FINE FARE
SUPERMARKET), 675 MORRIS AVE FOOD CORP.
(D/B/A FINE FARE SUPERMARKET), FRANK
PIMENTEL, DAISY PIMENTEL, and RIGO
DELGADO,

                                    Defendants.
-------------------------------------------------------------------x

Case No. 18-cv-03560
(JPO)

## NEGOTIATED SETTLEMENT AGREEMENT & RELEASE

      This Negotiated Settlement Agreement and Release ("Agreement") is made by and between defendants, 149 Street Food Corp, (d/b/a Fine Fare Supermarket), 675 Morris Ave Food Corp. (d/b/a Fine Fare Supermarket), Frank Pimentel, Daisy Pimentel and Rigo Delgado, on their own behalf and on behalf of their affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, predecessors, successors and assigns, and their past and present owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, insurers, representatives, fiduciaries and agents in their individual and/or representative capacities (collectively, the "Defendants" or "Employer"), and plaintiffs, Hildeberto Ibarra Perez (a/k/a Alberto Ibarra) and Santiago Hernandez (collectively, referred to as "Plaintiffs" or "Employees") on their own behalf and on behalf of their heirs, executors, administrators, successors and assigns (Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties").

      **WHEREAS,** Defendants and Plaintiffs are parties to a lawsuit filed in the United States District Court, Southern District of New York, styled *Hildeberto Ibarra Perez v. 149 Street Food Corp., et al.,* Case No. 18-cv-3560(JPO) (the "Civil Action");

      **WHEREAS,** in the Civil Action, Plaintiffs have asserted, among others, claims under the Fair Labor Standards Act and New York State Labor Laws seeking: unpaid wages, unpaid minimum wage, statutory damages, attorneys' fees and costs, interest, and statutory damages for Defendants' purported failure to provide Plaintiffs wage statements and wage notices pursuant to New York Labor Law §195 (together with all other claims Plaintiffs have asserted or could assert relating to wage notices or the payment of wages and benefits the "Wage and Hour Claims");

1

**WHEREAS**, Defendants joined issue with their filing and serving of their Answer (Doc. No. 24), which denied the allegations in Plaintiffs' Complaint filed in the Civil Action;

**WHEREAS**, the Defendants defended and continue to defend against all claims in the Civil Action and categorically deny Plaintiffs' allegations asserted in the Civil Action, deny engaging in any wrongdoing whatsoever, and deny that they were or are liable or owe any wages, damages, monies or obligations to Plaintiffs with respect to the allegations or causes of action asserted in the Civil Action;

**WHEREAS**, during the course of the Parties' discovery, a material dispute has arisen regarding Plaintiffs' Wage and Hour Claims;

**WHEREAS**, Plaintiffs represent, warrant and acknowledge that there are *bona fide* disputes between Plaintiffs and Defendants as to whether Plaintiffs are entitled to receive unpaid wages as alleged;

**WHEREAS**, the Parties understand and agree that Defendants and any and all present and former affiliated entities, predecessor entities, successor entities and respective present and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, professional employer organizations, administrators, executors, attorneys, insurers, representatives, fiduciaries, agents, heirs, and assigns, individually and in their official capacities, deny each and every assertion of wrongdoing alleged by Plaintiffs;

**WHEREAS**, the Parties understand and agree that neither the making of this Agreement, nor anything contained herein shall, in any way, be construed or considered to be an admission by the Defendants of any liability, guilt or noncompliance with any federal, state, city, or local statute, constitution, rule, ordinance, public policy, human rights or civil rights law, wage-hour law, wage-payment law, prevailing wage law, tort law, contract, common law, or of any other wrongdoing, unlawful conduct, liability or breach of any duty whatsoever to the Plaintiffs.  It is expressly understood and agreed that this Agreement is being entered into solely for the purpose of avoiding the costs of litigation and amicably resolving all matters in controversy, and any matters that concern wages between April 23, 2012 to present.

**WHEREAS**, Plaintiffs, with full assistance and through consultation with counsel, freely and voluntarily enter into this Agreement in exchange for the promises contained herein which pertain to Defendants and the full payment due from Defendants as provided for herein;

**WHEREAS**, the Court has made no findings as to the merits of the claims or allegations contained in Plaintiff's Complaint;

**WHEREAS**, the terms and conditions of this Agreement have been explained to the Parties by their counsel;

**NOW THEREFORE**, in consideration of the foregoing, the mutual promises and the Release contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed, the Parties each agree as follows:

2

1.      Release of Claims.   In consideration for the total payment of SIXTY TWO THOUSAND DOLLARS ($62,000.00) (the "Settlement Amount") as set forth in Paragraphs 3.1 and 3.2 herein, Plaintiffs hereby completely, irrevocably and unconditionally releases, waives and forever discharges any and all claims, charges, complaints, judgments, or liabilities of any kind against Defendants, their heirs, executors, administrators, estate, predecessors, successors, assigns, divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, business units, committees, groups, and their current and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, accountants, insurers, fiduciaries, representatives, and agents thereof both individually and in their business capacities (collectively referred to as "RELEASEES"), whether known or unknown, which against the RELEASEES, Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have from the beginning of time until the date of the complete execution of this Agreement relating to the Wage and Hour Claims, all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, as amended, all claims for breach of contract, compensation or remuneration of any kind, unpaid wages, unpaid overtime, unpaid prevailing wages and supplemental benefits, improper deductions, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, severance pay, bonuses, deferred compensation, incentive plans, medical, dental, life or disability insurance coverage, or any other fringe benefit, claims for statutory damages and/or penalties for failing to provide proper wage notices and/or wage statements, any other claims that were or could have been asserted in the Civil Action, and any claim for attorneys' fees or costs incurred in pursuing these or any other legal claims against any of the RELEASEES.

2.      COURT APPROVAL AND EFFECTIVENESS OF SETTLEMENT

2.1     Court Approval of FLSA Settlement.

(A)     Plaintiffs and Defendants will use reasonable efforts to file a Joint Motion seeking an Order approving the settlement of Plaintiffs' Wage and Hour Claims (the "Approval Motion").

(B)     In the Approval Motion, the Parties shall request that the Court approve the settlement of the Wage and Hour Claims as final, fair, reasonable, adequate, and binding on Plaintiffs, based on the terms of this Agreement, and shall dismiss the Civil Action with prejudice and without attorneys' fees or costs to any party except as specifically provided for in this Agreement.  As part of the Approval Motion, the parties shall submit a Stipulation of Discontinuance in the form attached as Exhibit "A" to be "So Ordered" by the Court.

(C)     If the Court denies the Approval Motion either in part or in its entirety, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement, if any.   Should such efforts be

3

unsuccessful and/or denied, the Civil Action will proceed as if no settlement had been attempted, and the Parties will retain all of their respective rights in these proceedings.

(D)     The Parties will work together, diligently and in good faith, to obtain expeditiously a final Order approving the Settlement Agreement and dismissing this Civil Action with prejudice.

(E)     The payments required by Paragraph "3.1(B)(1)" hereof from Defendants shall be delivered to Plaintiffs' counsel no later than thirty (30) days after Defendants' counsel's receipt of a final Order of the Court approving the settlement Agreement. To the extent that the Court rejects this Agreement, in whole or in part, Defendants shall have no obligation to provide the payments specified in Paragraph "3" hereof.  Further, in the event the Court entirely denies said application for approval, the obligations of the parties shall be deemed null and void and the Civil Action shall continue as though the parties had never entered into this Agreement.

2.2     Effectiveness.  This Agreement shall be effective only when: (a) this Agreement is executed by all Parties and (b) an Order of the Court has been issued approving the terms of settlement specified in this Agreement; and (c) this action is dismissed with prejudice; provided, however, that the provisions of Paragraph 2 of this Agreement shall become effective immediately upon execution of this Agreement by Defendants and Plaintiff.  The "Effective Date" shall be the first business day after the conditions precedent in this Paragraph are all satisfied.

3.      SETTLEMENT TERMS

3.1     Settlement Amount – Payable to Plaintiffs.

(A)     Defendants agree to pay the Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and any and all claims for attorneys' fees and costs in respect of this Civil Action.  The Settlement Amount shall comprise of all amounts payable under Paragraphs 3.1(B) and 3.2 of this Agreement.

(B)     From the Settlement Amount, $62,000, Plaintiffs shall receive payment by separate checks as follows:

1. Hildeberto Ibarra Perez a/k/a Alberto Ibarra

a. alleged unpaid wages in the gross sum of $6,046.10, less all applicable state, federal and local taxes and withholdings. A W-2 will be issued to Mr. Perez for this amount;

b. alleged liquidated damages, statutory damages and/or interest in the gross sum of $6,046.10 for which Mr. Perez will be provided with an IRS Form 1099.

2. Santiago Hernandez

 a. alleged unpaid wages in the gross sum of $14,394, less all applicable state, federal and local taxes and withholdings. A W-2 will be issued to Mr. Hernandez for this amount;

 b. alleged liquidated damages, statutory damages and/or interest in the gross sum of $14,394 for which Mr. Hernandez will be provided with an IRS Form 1099.

3. Plaintiffs' counsel, Michael Faillace & Associates P.C., the gross sum of $21,120 as payment towards attorneys' fees and costs for which an IRS Form 1099 will be provided.

3.2 Settlement Amount - Payable as Attorneys' Fees and Costs. From the Settlement Amount, Defendants agree to pay without any withholdings to Plaintiff's Counsel $21,120 as discussed in sections 3.1(B)(3), which represents payments of all attorneys' fees and costs incurred by Plaintiffs in connection with the Civil Action. Such amount will be made payable to "Michael Faillace & Associates P.C." Plaintiffs' attorney shall provide Defendants' attorney a completed and signed Form W-9. The Parties agree no other attorneys' fees and costs to Plaintiffs' attorneys are due or owing in connection with this Civil Action.

3.3 Tax Characterization.

 (A) For tax purposes, 33.3% (one third) of payments to Plaintiffs pursuant to Paragraph 3.1 shall be treated as unpaid wages for which a Form W-2 shall be issued and 66.7% (two-thirds) of such payments shall be treated as statutory notice and statement damages, interest and/or liquidated damages and issue without any withholdings for which a Form 1099 shall be issued. Plaintiffs shall provide to Defendants completed and executed IRS Forms W-4 and W-9. Plaintiffs' counsel shall provide to Defendants a completed and executed IRS Form W-9. No payment shall be issued under this Agreement until completed and executed IRS Forms W-4 and W-9 are tendered.

 (B) Payments treated as unpaid wages pursuant to Paragraph 3.3(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and each respective employee's share of FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Paragraph 3.3(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099. Said funds shall be listed in Box 3 ("Other Income") of the issued IRS Form 1099. Payments of attorneys' fees and costs pursuant

5

to Paragraph 3.2 shall be made to Plaintiffs' Counsel without withholding and reported on an IRS Form 1099 under the payee's name and taxpayer identification. Defendants shall issue to Plaintiffs' counsel a true and complete copy of the Electronic Federal Tax Payment System (EFTPS) receipts memorializing the payment of the applicable withholdings to the IRS and state tax authority, or such other reasonable proof reflecting that the Defendants remitted the withholdings made on the W-2 statements to the relevant taxing authorities.  Failure to provide such proof shall be deemed a material breach of this agreement and Defendants agree to indemnify and hold harmless the Plaintiffs for any tax liability they incur as a result of the Defendants failure to remit the W-2 withholdings to the relevant federal and state tax authorities

(C)     In the event that the Court decides Plaintiffs' attorneys should receive some other or lesser amount for fees and costs, then each of the payments listed above for the Plaintiffs shall be increased by the amount that Counsels' fees are diminished and such increase shall be spread pro rata between the two Plaintiffs based on the weight of their respective gross recovery compared with the total gross recovery allotted to the Plaintiffs and such pro rata increase of each Plaintiffs recovery shall maintain the 33.3% and 66.7% division outlined in Section 3.3(A) above between payments made by W-2 and those by 1099.

(D)     Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages pursuant to Paragraph 3.3(A).  Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Amount, and shall not be paid out of the Settlement Amount.  Defendants shall not be responsible for: (i) any payroll taxes imposed on employees, rather than employers; (ii) any taxes imposed on the portion of the payments to Plaintiff treated as payment of interest and/or liquidated damages reported on Forms 1099; or (iii) any taxes imposed with respect to the payment of attorneys' fees to Plaintiff's Counsel under this Agreement.

(E)     Plaintiffs acknowledge and agree that, except as specified in Paragraph 3.3(C), they will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Additionally, Plaintiff agrees to indemnify and hold Defendants harmless for any and all federal, state, city, and local taxes, interest, charges, and penalties that are due, may become due or are otherwise assessed against Plaintiff at any time with respect to any portion of the Settlement Amount received by Plaintiff, except for the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages as specified in Paragraph 3.3(C).

  (F)  The employee portion of all applicable income and payroll taxes will be the sole responsibility of Plaintiff.

  3.4  Settlement Checks. Subject to the provisions of Paragraphs 2.1 and 3.3 above, the payments referenced in Paragraphs 3.1 and 3.2 above shall be delivered by Defendants to the Plaintiffs' counsel, via overnight mail with tracking service, Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, New York 10165. In the event that the payments referenced in Paragraphs 3.1 and 3.2 above are not received by the payment date described in Paragraph 2.1(E), Plaintiff's counsel shall serve a written notice ("Default Notice") upon counsel for the Defendants, Gregory S. Lisi, Esq. and Lisa M. Casa, Esq., Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11553, glisi@forchellilaw.com, lcasa@forchellilaw.com via e-mail, and the Defendants shall have ten (10) calendar days from receipt of same to cure the default by making such payment. Upon Defendants' failure to cure a default within ten (10) calendar days of receipt of the Default Notice, this settlement Agreement shall be deemed void and the case may be reopened as if no settlement Agreement had been entered.

  4.  Representations and Warranties of Plaintiffs. By signing this Agreement, Plaintiffs acknowledge and agree that:

  (A)  They have been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms of this Agreement, and they have been specifically advised to consult with legal counsel or a representative of her choice, had the opportunity to do so and has, in fact, done so by consulting with Plaintiffs' Counsel;

  (B)  They have read and understand the terms of this Agreement, all of which have been fully explained to them;

  (C)  They are not affected by any condition, drug, alcohol or medication that would interfere with or impair her ability to understand this Agreement;

  (D)  They have signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

  (E)  The only consideration for signing this Agreement is the terms stated herein and no other promise, agreement or representation of any kind have been made to Plaintiffs by any person or entity whatsoever to cause them to sign this Agreement;

  (F)  They have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim in this Civil Action, and has full authority to enter into this Agreement and the release contained in Paragraph 1 above;

  (G)  Upon payment of the amounts due pursuant to Paragraph 3 above, Plaintiffs will have been paid in full for all time worked in connection with her

employment with Defendants and Plaintiffs are owed no other amounts or forms of compensation, including, but not limited to, any wages, overtime, minimum wage, prevailing wages, supplemental benefits, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, accrued benefits, severance, bonus, tips, and/or commission from Defendants.

5.    The Parties acknowledge that the RELEASEES do not admit that they have done anything wrong or treated Plaintiff unlawfully. The Parties acknowledge that Defendants agreed to this Agreement with the understanding that the terms have been reached because this settlement will: (i) avoid the further expense of costly and protracted litigation; and (ii) put the claims in this Civil Action to rest. Nothing in this Agreement shall be deemed or read as an admission by any RELEASEE of liability or damages.

6.    If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible.

7.    Plaintiffs represent that they will not file or pursue any complaints, lawsuits, charges, claims, demands, appeals or actions, whether currently pending or that may be filed in the future, of any kind in any forum (including court, administrative or governmental agency, or arbitration) against the Defendants for any compensation or remuneration of any kind, wages, overtime, prevailing wages and supplemental benefits, improper deductions, accrued benefits, the Wage and Hour Claims asserted in this Civil Action, and all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, up to the date of this Agreement.

8.    Plaintiffs understand that, to the extent permitted by law, Plaintiffs waive all rights to redress for any rejection of such future applications for re-employment by or reinstatement with Defendants. Plaintiffs understand that if they apply to work for Defendants at any time, the Defendants, based on this paragraph, may deny Plaintiffs employment for any position the Plaintiffs seek and that such denial will not be a violation of any federal, state or municipal statute and/or common law right and will not be deemed retaliatory in any way.

9.    Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or portion thereof or interest therein, including, but not limited to, any interest in the Civil Action.

**10.    Plaintiffs are hereby advised to retain an attorney for the purpose of reviewing the Agreement, represents and warrants that they have in fact retained an attorneys, Michael Faillace & Associates, P.C. for the purpose of reviewing this Agreement, know that they may be giving up important rights, have carefully read and fully considered the terms of this Agreement, have had ample opportunity to negotiate the terms of this Agreement through their attorney, have had ample opportunity to discuss the terms of the Agreement with**

**attorneys or advisors of their own choosing, agrees to all of the terms of this Agreement, intends to be bound by them and to fulfill the promises set forth herein, and voluntarily and knowingly enter into this Agreement with full understanding of its binding legal consequences and have executed this Agreement voluntarily, knowingly and with such advice from their attorney as they deem appropriate.**

11.     Enforcement of this Agreement shall be governed and interpreted by, and under, the laws of the state of New York, regardless of whether any party is, or may hereafter be, a resident of another state.

12.     No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment subject to Court approval, if necessary.

13.     This Agreement shall be binding upon, and inure to the benefit of the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

14.     The Parties have negotiated and mutually drafted all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties entering into this Agreement, unless otherwise expressly stated.

15.     The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval to this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

16.     The Parties agree to have the United States District Court, Southern District of New York retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

17.     This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein.  This Agreement may not be changed or altered, except in writing and signed by all Parties.

18.     In any interpretation of this Agreement the masculine, feminine or neutral pronouns, respectively, shall include the other genders.

19.     The Parties agree that should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against either party as the drafter of this Agreement.  The Agreement will be interpreted by the trier of fact, without regard to the identity of the drafter of the Agreement or any of its terms or provisions.

20.     The Parties agree not to seek any interest, fees or costs from each other and, except as provided in this Agreement, agree to be responsible for the payment of their own attorneys' fees, costs and disbursements incurred in connection with the Civil Action. This provision does not preclude any party from seeking reasonable costs, attorneys' fees and interest in the event there is a material breach of this Agreement.

21.     This Agreement may be executed in counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of an ADOBE ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page was an original thereof.

22.     This Agreement supersedes all prior agreements or understandings of any kind, whether oral and written, and represents the entire Agreement of the Parties. This Agreement is intended to provide a memorialize the full and final compromise and settlement of all matters in controversy, disputes, causes of action, claims, contentions and differences between the Parties to this Agreement. This Agreement represents the entire understanding of the Parties with respect to the subject matter hereof.


**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**THEREFORE,** the Parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

**Hildeberto Ibarra Perez**
**a/k/a Alberto Ibarra**

Dated:  April 16, 2019

Hildeberto Ibarra Perez a/k/a Alberto Ibarra

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF              )

On April 16, 2019 before me personally came to me Hildeberto Ibarra Perez a/k/a Alberto Ibarra, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that she executed the same.

> MARIA J CEDENO CASSINELLI
> Notary Public, State of New York
> Registration #01CE6332862
> Qualified In Nassau County
> Commission Expires Nov. 9, 2019

Notary Public

**Santiago Hernandez**

Dated:  April 16, 2019

Santiago Hernández

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF              )

On April 16, 2019 before me personally came to me Santiago Hernandez, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that she executed the same.

> MARIA J CEDENO CASSINELLI
> Notary Public, State of New York
> Registration #01CE6332862
> Qualified In Nassau County
> Commission Expires Nov. 9, 2019

Notary Public

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

HILDEBERTO IBARRA PEREZ (A/K/A ALBERTO      Case No. 18-cv-03560
IBARRA) and SANTIAGO HERNANDEZ,      (JPO)
*individually and on behalf of others similarly situated,*

           Plaintiffs,

      -against-

149 STREET FOOD CORP. (D/B/A FINE FARE
SUPERMARKET), 675 MORRIS AVE FOOD CORP.
(D/B/A FINE FARE SUPERMARKET), FRANK
PIMENTEL, DAISY PIMENTEL, and RIGO
DELGADO,

           Defendants.
-----------------------------------------------------------------x

## NEGOTIATED SETTLEMENT AGREEMENT & RELEASE

This Negotiated Settlement Agreement and Release ("Agreement") is made by and between defendants, 149 Street Food Corp, (d/b/a Fine Fare Supermarket), 675 Morris Ave Food Corp. (d/b/a Fine Fare Supermarket), Frank Pimentel, Daisy Pimentel and Rigo Delgado, on their own behalf and on behalf of their affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, predecessors, successors and assigns, and their past and present owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, insurers, representatives, fiduciaries and agents in their individual and/or representative capacities (collectively, the "Defendants" or "Employer"), and plaintiffs, Hildeberto Ibarra Perez (a/k/a Alberto Ibarra) and Santiago Hernandez (collectively, referred to as "Plaintiffs" or "Employees") on their own behalf and on behalf of their heirs, executors, administrators, successors and assigns (Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties").

**WHEREAS**, Defendants and Plaintiffs are parties to a lawsuit filed in the United States District Court, Southern District of New York, styled *Hildeberto Ibarra Perez v. 149 Street Food Corp., et al.,* Case No. 18-cv-3560(JPO) (the "Civil Action");

**WHEREAS**, in the Civil Action, Plaintiffs have asserted, among others, claims under the Fair Labor Standards Act and New York State Labor Laws seeking: unpaid wages, unpaid minimum wage, statutory damages, attorneys' fees and costs, interest, and statutory damages for Defendants' purported failure to provide Plaintiffs wage statements and wage notices pursuant to New York Labor Law §195 (together with all other claims Plaintiffs have asserted or could assert relating to wage notices or the payment of wages and benefits the "Wage and Hour Claims");

1

**WHEREAS**, Defendants joined issue with their filing and serving of their Answer (Doc. No. 24), which denied the allegations in Plaintiffs' Complaint filed in the Civil Action;

**WHEREAS**, the Defendants defended and continue to defend against all claims in the Civil Action and categorically deny Plaintiffs' allegations asserted in the Civil Action, deny engaging in any wrongdoing whatsoever, and deny that they were or are liable or owe any wages, damages, monies or obligations to Plaintiffs with respect to the allegations or causes of action asserted in the Civil Action;

**WHEREAS**, during the course of the Parties' discovery, a material dispute has arisen regarding Plaintiffs' Wage and Hour Claims;

**WHEREAS**, Plaintiffs represent, warrant and acknowledge that there are *bona fide* disputes between Plaintiffs and Defendants as to whether Plaintiffs are entitled to receive unpaid wages as alleged;

**WHEREAS**, the Parties understand and agree that Defendants and any and all present and former affiliated entities, predecessor entities, successor entities and respective present and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, professional employer organizations, administrators, executors, attorneys, insurers, representatives, fiduciaries, agents, heirs, and assigns, individually and in their official capacities, deny each and every assertion of wrongdoing alleged by Plaintiffs;

**WHEREAS**, the Parties understand and agree that neither the making of this Agreement, nor anything contained herein shall, in any way, be construed or considered to be an admission by the Defendants of any liability, guilt or noncompliance with any federal, state, city, or local statute, constitution, rule, ordinance, public policy, human rights or civil rights law, wage-hour law, wage-payment law, prevailing wage law, tort law, contract, common law, or of any other wrongdoing, unlawful conduct, liability or breach of any duty whatsoever to the Plaintiffs.  It is expressly understood and agreed that this Agreement is being entered into solely for the purpose of avoiding the costs of litigation and amicably resolving all matters in controversy, and any matters that concern wages between April 23, 2012 to present.

**WHEREAS**, Plaintiffs, with full assistance and through consultation with counsel, freely and voluntarily enter into this Agreement in exchange for the promises contained herein which pertain to Defendants and the full payment due from Defendants as provided for herein;

**WHEREAS**, the Court has made no findings as to the merits of the claims or allegations contained in Plaintiff's Complaint;

**WHEREAS**, the terms and conditions of this Agreement have been explained to the Parties by their counsel;

**NOW THEREFORE**, in consideration of the foregoing, the mutual promises and the Release contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed, the Parties each agree as follows:

1.      **Release of Claims.**  In consideration for the total payment of SIXTY TWO THOUSAND DOLLARS ($62,000.00) (the "Settlement Amount") as set forth in Paragraphs 3.1 and 3.2 herein, Plaintiffs hereby completely, irrevocably and unconditionally releases, waives and forever discharges any and all claims, charges, complaints, judgments, or liabilities of any kind against Defendants, their heirs, executors, administrators, estate, predecessors, successors, assigns, divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, business units, committees, groups, and their current and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, accountants, insurers, fiduciaries, representatives, and agents thereof both individually and in their business capacities (collectively referred to as "RELEASEES"), whether known or unknown, which against the RELEASEES, Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have from the beginning of time until the date of the complete execution of this Agreement relating to the Wage and Hour Claims, all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.,* the New York Labor Law §§230, *et seq.,* the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, as amended, all claims for breach of contract, compensation or remuneration of any kind, unpaid wages, unpaid overtime, unpaid prevailing wages and supplemental benefits, improper deductions, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, severance pay, bonuses, deferred compensation, incentive plans, medical, dental, life or disability insurance coverage, or any other fringe benefit, claims for statutory damages and/or penalties for failing to provide proper wage notices and/or wage statements, any other claims that were or could have been asserted in the Civil Action, and any claim for attorneys' fees or costs incurred in pursuing these or any other legal claims against any of the RELEASEES.

2.      **COURT APPROVAL AND EFFECTIVENESS OF SETTLEMENT**

2.1      Court Approval of FLSA Settlement.

    (A)      Plaintiffs and Defendants will use reasonable efforts to file a Joint Motion seeking an Order approving the settlement of Plaintiffs' Wage and Hour Claims (the "Approval Motion").

    (B)      In the Approval Motion, the Parties shall request that the Court approve the settlement of the Wage and Hour Claims as final, fair, reasonable, adequate, and binding on Plaintiffs, based on the terms of this Agreement, and shall dismiss the Civil Action with prejudice and without attorneys' fees or costs to any party except as specifically provided for in this Agreement.  As part of the Approval Motion, the parties shall submit a Stipulation of Discontinuance in the form attached as Exhibit "A" to be "So Ordered" by the Court.

    (C)      If the Court denies the Approval Motion either in part or in its entirety, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement, if any.   Should such efforts be

3

unsuccessful and/or denied, the Civil Action will proceed as if no settlement had been attempted, and the Parties will retain all of their respective rights in these proceedings.

(D)     The Parties will work together, diligently and in good faith, to obtain expeditiously a final Order approving the Settlement Agreement and dismissing this Civil Action with prejudice.

(E)     The payments required by Paragraph "3.1(B)(1)" hereof from Defendants shall be delivered to Plaintiffs' counsel no later than thirty (30) days after Defendants' counsel's receipt of a final Order of the Court approving the settlement Agreement. To the extent that the Court rejects this Agreement, in whole or in part, Defendants shall have no obligation to provide the payments specified in Paragraph "3" hereof. Further, in the event the Court entirely denies said application for approval, the obligations of the parties shall be deemed null and void and the Civil Action shall continue as though the parties had never entered into this Agreement.

2.2     Effectiveness.  This Agreement shall be effective only when: (a) this Agreement is executed by all Parties and (b) an Order of the Court has been issued approving the terms of settlement specified in this Agreement; and (c) this action is dismissed with prejudice; provided, however, that the provisions of Paragraph 2 of this Agreement shall become effective immediately upon execution of this Agreement by Defendants and Plaintiff. The "Effective Date" shall be the first business day after the conditions precedent in this Paragraph are all satisfied.

3.     SETTLEMENT TERMS

3.1     Settlement Amount – Payable to Plaintiffs.

(A)     Defendants agree to pay the Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and any and all claims for attorneys' fees and costs in respect of this Civil Action.  The Settlement Amount shall comprise of all amounts payable under Paragraphs 3.1(B) and 3.2 of this Agreement.

(B)     From the Settlement Amount, $62,000, Plaintiffs shall receive payment by separate checks as follows:

1. Hildeberto Ibarra Perez a/k/a Alberto Ibarra

a. alleged unpaid wages in the gross sum of $6,046.10, less all applicable state, federal and local taxes and withholdings. A W-2 will be issued to Mr. Perez for this amount;

b. alleged liquidated damages, statutory damages and/or interest in the gross sum of $6,046.10 for which Mr. Perez will be provided with an IRS Form 1099.

4

2. Santiago Hernandez

    a. alleged unpaid wages in the gross sum of $14,394, less all applicable state, federal and local taxes and withholdings. A W-2 will be issued to Mr. Hernandez for this amount;

    b. alleged liquidated damages, statutory damages and/or interest in the gross sum of $14,394 for which Mr. Hernandez will be provided with an IRS Form 1099.

3. Plaintiffs' counsel, Michael Faillace & Associates P.C., the gross sum of $21,120 as payment towards attorneys' fees and costs for which an IRS Form 1099 will be provided.

3.2    Settlement Amount - Payable as Attorneys' Fees and Costs. From the Settlement Amount, Defendants agree to pay without any withholdings to Plaintiff's Counsel $21,120 as discussed in sections 3.1(B)(3), which represents payments of all attorneys' fees and costs incurred by Plaintiffs in connection with the Civil Action. Such amount will be made payable to "Michael Faillace & Associates P.C." Plaintiffs' attorney shall provide Defendants' attorney a completed and signed Form W-9. The Parties agree no other attorneys' fees and costs to Plaintiffs' attorneys are due or owing in connection with this Civil Action.

3.3    Tax Characterization.

(A)    For tax purposes, 33.3% (one third) of payments to Plaintiffs pursuant to Paragraph 3.1 shall be treated as unpaid wages for which a Form W-2 shall be issued and 66.7% (two-thirds) of such payments shall be treated as statutory notice and statement damages, interest and/or liquidated damages and issue without any withholdings for which a Form 1099 shall be issued. Plaintiffs shall provide to Defendants completed and executed IRS Forms W-4 and W-9. Plaintiffs' counsel shall provide to Defendants a completed and executed IRS Form W-9. No payment shall be issued under this Agreement until completed and executed IRS Forms W-4 and W-9 are tendered.

(B)    Payments treated as unpaid wages pursuant to Paragraph 3.3(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and each respective employee's share of FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Paragraph 3.3(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099. Said funds shall be listed in Box 3 ("Other Income") of the issued IRS Form 1099. Payments of attorneys' fees and costs pursuant

5

to Paragraph 3.2 shall be made to Plaintiffs' Counsel without withholding and reported on an IRS Form 1099 under the payee's name and taxpayer identification. Defendants shall issue to Plaintiffs' counsel a true and complete copy of the Electronic Federal Tax Payment System (EFTPS) receipts memorializing the payment of the applicable withholdings to the IRS and state tax authority, or such other reasonable proof reflecting that the Defendants remitted the withholdings made on the W-2 statements to the relevant taxing authorities. Failure to provide such proof shall be deemed a material breach of this agreement and Defendants agree to indemnify and hold harmless the Plaintiffs for any tax liability they incur as a result of the Defendants failure to remit the W-2 withholdings to the relevant federal and state tax authorities

(C)    In the event that the Court decides Plaintiffs' attorneys should receive some other or lesser amount for fees and costs, then each of the payments listed above for the Plaintiffs shall be increased by the amount that Counsels' fees are diminished and such increase shall be spread pro rata between the two Plaintiffs based on the weight of their respective gross recovery compared with the total gross recovery allotted to the Plaintiffs and such pro rata increase of each Plaintiffs recovery shall maintain the 33.3% and 66.7% division outlined in Section 3.3(A) above between payments made by W-2 and those by 1099.

(D)    Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages pursuant to Paragraph 3.3(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Amount, and shall not be paid out of the Settlement Amount. Defendants shall not be responsible for: (i) any payroll taxes imposed on employees, rather than employers; (ii) any taxes imposed on the portion of the payments to Plaintiff treated as payment of interest and/or liquidated damages reported on Forms 1099; or (iii) any taxes imposed with respect to the payment of attorneys' fees to Plaintiff's Counsel under this Agreement.

(E)    Plaintiffs acknowledge and agree that, except as specified in Paragraph 3.3(C), they will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Additionally, Plaintiff agrees to indemnify and hold Defendants harmless for any and all federal, state, city, and local taxes, interest, charges, and penalties that are due, may become due or are otherwise assessed against Plaintiff at any time with respect to any portion of the Settlement Amount received by Plaintiff, except for the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages as specified in Paragraph 3.3(C).

6

(F)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of Plaintiff.

3.4     Settlement Checks.  Subject to the provisions of Paragraphs 2.1 and 3.3 above, the payments referenced in Paragraphs 3.1 and 3.2 above shall be delivered by Defendants to the Plaintiffs' counsel, via overnight mail with tracking service, Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, New York 10165.  In the event that the payments referenced in Paragraphs 3.1 and 3.2 above are not received by the payment date described in Paragraph 2.1(E), Plaintiff's counsel shall serve a written notice ("Default Notice") upon counsel for the Defendants, Gregory S. Lisi, Esq. and Lisa M. Casa, Esq., Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11553, glisi@forchellilaw.com, lcasa@forchellilaw.com via e-mail, and the Defendants shall have ten (10) calendar days from receipt of same to cure the default by making such payment.  Upon Defendants' failure to cure a default within ten (10) calendar days of receipt of the Default Notice, this settlement Agreement shall be deemed void and the case may be reopened as if no settlement Agreement had been entered.

4.     Representations and Warranties of Plaintiffs.  By signing this Agreement, Plaintiffs acknowledge and agree that:

(A)     They have been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms of this Agreement, and they have been specifically advised to consult with legal counsel or a representative of her choice, had the opportunity to do so and has, in fact, done so by consulting with Plaintiffs' Counsel;

(B)     They have read and understand the terms of this Agreement, all of which have been fully explained to them;

(C)     They are not affected by any condition, drug, alcohol or medication that would interfere with or impair her ability to understand this Agreement;

(D)     They have signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

(E)     The only consideration for signing this Agreement is the terms stated herein and no other promise, agreement or representation of any kind have been made to Plaintiffs by any person or entity whatsoever to cause them to sign this Agreement;

(F)     They have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim in this Civil Action, and has full authority to enter into this Agreement and the release contained in Paragraph 1 above;

(G)     Upon payment of the amounts due pursuant to Paragraph 3 above, Plaintiffs will have been paid in full for all time worked in connection with her

7

employment with Defendants and Plaintiffs are owed no other amounts or forms of compensation, including, but not limited to, any wages, overtime, minimum wage, prevailing wages, supplemental benefits, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, accrued benefits, severance, bonus, tips, and/or commission from Defendants.

5.      The Parties acknowledge that the RELEASEES do not admit that they have done anything wrong or treated Plaintiff unlawfully.  The Parties acknowledge that Defendants agreed to this Agreement with the understanding that the terms have been reached because this settlement will: (i) avoid the further expense of costly and protracted litigation; and (ii) put the claims in this Civil Action to rest.  Nothing in this Agreement shall be deemed or read as an admission by any RELEASEE of liability or damages.

6.      If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible.

7.      Plaintiffs represent that they will not file or pursue any complaints, lawsuits, charges, claims, demands, appeals or actions, whether currently pending or that may be filed in the future, of any kind in any forum (including court, administrative or governmental agency, or arbitration) against the Defendants for any compensation or remuneration of any kind, wages, overtime, prevailing wages and supplemental benefits, improper deductions, accrued benefits, the Wage and Hour Claims asserted in this Civil Action, and all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.,* the New York Labor Law §§230, *et seq.,* the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, up to the date of this Agreement.

8.      Plaintiffs understand that, to the extent permitted by law, Plaintiffs waive all rights to redress for any rejection of such future applications for re-employment by or reinstatement with Defendants. Plaintiffs understand that if they apply to work for Defendants at any time, the Defendants, based on this paragraph, may deny Plaintiffs employment for any position the Plaintiffs seek and that such denial will not be a violation of any federal, state or municipal statute and/or common law right and will not be deemed retaliatory in any way.

9.      Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or portion thereof or interest therein, including, but not limited to, any interest in the Civil Action.

**10.     Plaintiffs are hereby advised to retain an attorney for the purpose of reviewing the Agreement, represents and warrants that they have in fact retained an attorneys, Michael Faillace & Associates, P.C. for the purpose of reviewing this Agreement, know that they may be giving up important rights, have carefully read and fully considered the terms of this Agreement, have had ample opportunity to negotiate the terms of this Agreement through their attorney, have had ample opportunity to discuss the terms of the Agreement with**

attorneys or advisors of their own choosing, agrees to all of the terms of this Agreement, intends to be bound by them and to fulfill the promises set forth herein, and voluntarily and knowingly enter into this Agreement with full understanding of its binding legal consequences and have executed this Agreement voluntarily, knowingly and with such advice from their attorney as they deem appropriate.

11.     Enforcement of this Agreement shall be governed and interpreted by, and under, the laws of the state of New York, regardless of whether any party is, or may hereafter be, a resident of another state.

12.     No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment subject to Court approval, if necessary.

13.     This Agreement shall be binding upon, and inure to the benefit of the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

14.     The Parties have negotiated and mutually drafted all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties entering into this Agreement, unless otherwise expressly stated.

15.     The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval to this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

16.     The Parties agree to have the United States District Court, Southern District of New York retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

17.     This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein.  This Agreement may not be changed or altered, except in writing and signed by all Parties.

18.     In any interpretation of this Agreement the masculine, feminine or neutral pronouns, respectively, shall include the other genders.

19.     The Parties agree that should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against either party as the drafter of this Agreement.  The Agreement will be interpreted by the trier of fact, without regard to the identity of the drafter of the Agreement or any of its terms or provisions.

20.     The Parties agree not to seek any interest, fees or costs from each other and, except as provided in this Agreement, agree to be responsible for the payment of their own attorneys' fees, costs and disbursements incurred in connection with the Civil Action. This provision does not preclude any party from seeking reasonable costs, attorneys' fees and interest in the event there is a material breach of this Agreement.

21.     This Agreement may be executed in counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of an ADOBE ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page was an original thereof.

22.     This Agreement supersedes all prior agreements or understandings of any kind, whether oral and written, and represents the entire Agreement of the Parties. This Agreement is intended to provide a memorialize the full and final compromise and settlement of all matters in controversy, disputes, causes of action, claims, contentions and differences between the Parties to this Agreement. This Agreement represents the entire understanding of the Parties with respect to the subject matter hereof.

**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**THEREFORE,** the Parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

**Hildeberto Ibarra Perez**
**a/k/a Alberto Ibarra**

Dated: April 16, 2019

_____
Hildeberto Ibarra Perez a/k/a Alberto Ibarra

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF                )

On April 16, 2019 before me personally came to me Hildeberto Ibarra Perez a/k/a Alberto Ibarra, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that she executed the same.

> MARIA J CEDENO CASSINELLI
> Notary Public, State of New York
> Registration #01CE6332862
> Qualified In Nassau County
> Commission Expires Nov. 9, 2019

_____
Notary Public

**Santiago Hernandez**

Dated: April 16, 2019

_____
Santiago Hernandez

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF                )

On April 16, 2019 before me personally came to me Santiago Hernandez, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that she executed the same.

> MARIA J CEDENO CASSINELLI
> Notary Public, State of New York
> Registration #01CE6332862
> Qualified In Nassau County
> Commission Expires Nov. 9, 2019

_____
Notary Public

11

**149 Street Food Corp.**

Dated:  April 18, 2019

By: _____

Title: President

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF Bronx      )

On April 18, 2019 before me personally came to me Frank Pimentel, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release on behalf of 149 Street Food Corp., and duly acknowledged to me that he executed the same.

_____
Notary Public

ALICE M. DELACRUZ
Notary Public, State of New York
No. 01DE6136816
Qualified in Bronx County
Commission Expires Nov. 14, 20 21

**675 Morris Ave Food Corp.**

Dated:  April 18, 2019

By: _____

Title: President

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF Bronx      )

On April 18, 2019 before me personally came to me Frank Pimentel known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release on behalf of 675 Morris Ave Food Corp., and duly acknowledged to me that he executed the same.

_____
Notary Public

ALICE M. DELACRUZ
Notary Public, State of New York
No. 01DE6136816
Qualified in Bronx County
Commission Expires Nov. 14, 20 21

12

**Frank Pimentel, Individually**

Dated: April 18, 2019

_____
Frank Pimentel, Individually

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF Bronx      )

On April 18, 2019 before me personally came to me Frank Pimentel, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

ALICE M. DELACRUZ
Notary Public, State of New York
No. 01DE6136816
Qualified in Bronx County
Commission Expires Nov. 14, 20 21

**Daisy Pimentel, Individually**

Dated: April 18, 2019

_____
Daisy Pimentel, Individually

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF Bronx      )

On April 18, 2019 before me personally came to me Daisy Pimentel, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

ALICE M. DELACRUZ
Notary Public, State of New York
No. 01DE6136816
Qualified in Bronx County
Commission Expires Nov. 14, 20 21

13

**Rigo Delgado, Individually**

Dated: April _18_, 2019

Rigo Delgado, Individually

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF  Bronx     )

On April _18_, 2019 before me personally came to me Rigo Delgado, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

Notary Public

ALICE M. DELACRUZ
Notary Public, State of New York
No. 01DE6136816
Qualified in Bronx County
Commission Expires Nov. 14, 20__21

14

# EXHIBIT B

### *Michael Faillace & Associates, P.C.*
60 East 42nd Street
Suite 4510
New York, NY 10165

Ph:(212) 317-1200          Fax:(212) 317-1620

Hildeberto  Ibarra                                                      April 24, 2019

|  |  |
|---|---|
| File #: | FineFare2018 |
| **Attention:** | Inv  #:     1148 |

**RE:**     Ibarra Perez et al v. 149 Street Food Corp. et al

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Apr-12-18 | Initial consultation with MF Hildeberto Ibarra Perez | 1.00 | 450.00 | MF |
|  | Initial consultation with MF Santiago Hernandez | 1.00 | 450.00 | MF |
| Apr-22-18 | Drafted Complaint | 3.00 | 1,350.00 | MF |
| Jul-10-18 | multiple phone calls with defense counsel | 0.40 | 100.00 | HA |
|  | letter to judge and case management plan | 0.60 | 150.00 | HA |
| Jul-26-18 | letter seeking clarification re protective order | 0.30 | 75.00 | HA |
|  | protective order | 0.80 | 200.00 | HA |
|  | initial disclosures | 0.50 | 125.00 | HA |
| Aug-14-18 | discussed status of case with staff | 0.10 | 45.00 | MF |
| Aug-27-18 | Meeting with client Santiago Hernandez to answer interrogatories | 0.25 | 25.00 | PL |
| Oct-22-18 | discussed the case with CM | 0.10 | 45.00 | MF |
|  | discussed case with CM | 0.20 | 90.00 | MF |

| Oct-24-18 | discussed case with CM | 0.20 | 90.00 | MF |
| Oct-29-18 | advised CM on tomorrow's conference | 0.10 | 45.00 | MF |
| Oct-30-18 | discussed conference with CM | 0.20 | 90.00 | MF |
| Dec-17-18 | reviewed documents and discussed case with CM | 0.40 | 180.00 | MF |
| | contacted client and discussed case with him | 0.50 | 225.00 | MF |
| Mar-18-19 | review draft complaint and def edits and conference with def attorney re: edits | 0.60 | 210.00 | MF |
| Apr-15-19 | review and edit sett agreement | 0.40 | 140.00 | GN |
| Apr-24-19 | draft and review fairness motion | 1.20 | 420.00 | GN |
| | Totals | 11.85 | $4,505.00 | |

**DISBURSEMENTS**

| | Filing Fee | 400.00 |
| Apr-26-18 | Process Server: 149 Street Food Corp. | 65.00 |
| | Process Server: 675 Morris Avenue | 65.00 |
| Apr-28-18 | Process Server: Frank Pimentel | 50.00 |
| | Process Server: Rigo Delgado | 50.00 |
| | Process Server: Daisy Pimentel | 50.00 |
| | Totals | $680.00 |

| **Total Fee & Disbursements** | **$5,185.00** |
| **Balance Now Due** | **$5,185.00** |

# EXHIBIT C

Privileged Settlement Communication

Subject to  Revision / Correction

| Plaintiff | Pay Period From | To | No. Weeks in Pay Period | Hours Per Week in Period | No. of SOH Days Per Wk in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT | Liq. Damages on Wages & OT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hildeberto Ibarra Perez | 7/1/2016 | 12/30/2016 | 26 | 50 | 6 | $ 10.00 | $ 15.00 | $ 9.00 | $ 13.50 | $ 550.00 | $ 500.00 | $ 50.00 | $ 1,300.00 | $ 1,300.00 |
| | 12/31/2016 | 12/30/2017 | 52 | 42 | 6 | $ 11.90 | $ 17.86 | $ 11.00 | $ 16.50 | $ 511.90 | $ 500.00 | $ 11.90 | $ 619.05 | $ 619.05 |
| | 12/31/2017 | 2/1/2018 | 5 | 42 | 6 | $ 11.90 | $ 17.86 | $ 13.00 | $ 19.50 | $ 559.00 | $ 500.00 | $ 59.00 | $ 295.00 | $ 295.00 |
| | 2/2/2018 | 3/5/2018 | 4 | 42 | 6 | $ 10.83 | $ 16.25 | $ 13.00 | $ 19.50 | $ 559.00 | $ 455.00 | $ 104.00 | $ 416.00 | $ 416.00 |
| | | | | | | | | | | | Total: | $ 2,630.05 | $ | 2,630.05 |
| | | | | | | | | | | | | | | |
| Santiago Hernandez | 12/1/2014 | 12/30/2014 | 4 | 67.5 | 6 | $ 7.41 | $ 11.11 | $ 8.00 | $ 12.00 | $ 650.00 | $ 500.00 | $ 150.00 | $ 600.00 | $ 600.00 |
| | 12/31/2014 | 12/30/2015 | 52 | 67.5 | 6 | $ 7.41 | $ 11.11 | $ 8.75 | $ 13.13 | $ 710.94 | $ 500.00 | $ 210.94 | $ 10,968.75 | $ 10,968.75 |
| | 12/31/2015 | 12/30/2016 | 52 | 44 | 6 | $ 11.36 | $ 17.05 | $ 9.00 | $ 13.50 | $ 522.73 | $ 500.00 | $ 22.73 | $ 1,181.82 | $ 1,181.82 |
| | 12/31/2016 | 10/15/2017 | 41 | 44 | 6 | $ 11.36 | $ 17.05 | $ 11.00 | $ 16.50 | $ 522.73 | $ 500.00 | $ 22.73 | $ 931.82 | $ 931.82 |
| | 12/1/2017 | 12/30/2017 | 4 | 44 | 6 | $ 11.36 | $ 17.05 | $ 11.00 | $ 16.50 | $ 522.73 | $ 500.00 | $ 22.73 | $ 90.91 | $ 90.91 |
| | 12/31/2017 | 4/17/2018 | 15 | 44 | 6 | $ 11.36 | $ 17.05 | $ 13.00 | $ 19.50 | $ 598.00 | $ 500.00 | $ 98.00 | $ 1,470.00 | $ 1,470.00 |
| | | | | | | | | | | | Total: | $ 15,243.30 | $ | 15,243.30 |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | Total: | $ 17,873.34 | $ | 17,873.34 |
| | | | | 1 This chart is based upon preliminary information and the expected testimony of Plaintiffs. | | | | | | | | | | |
| | | | | 2 Plaintiffs reserve the right to correct or amend this chart. | | | | | | | | | | |

Privileged Settlement Communication                                                                                     Subject to  Revision / Correction

| Plaintiff | Pay Period From | To | Unpaid Spread of Hours (SOH) Pay | Liq. Damages on unpaid SOH | Annual Wage Notice | Weekly Wage Statement | Pre Jud. Interest (PJI) on OT & Wages | (PJI) Spread of Hours | Tools of the Trade | Total Per Period |
|---|---|---|---|---|---|---|---|---|---|---|
| Hildeberto Ibarra Perez | 7/1/2016 | 12/30/2016 | $ 1,404.00 | $ 1,404.00 | $ 5,000.00 | $ 5,000.00 | $ 300.92 | $ 324.99 | $ - | $ 16,033.91 |
| | 12/31/2016 | 12/30/2017 | $ 3,432.00 | $ 3,432.00 | | | $ 101.47 | $ 562.56 | | $ 8,766.12 |
| | 12/31/2017 | 2/1/2018 | $ 390.00 | $ 390.00 | | | $ 33.88 | $ 44.79 | | $ 1,448.67 |
| | 2/2/2018 | 3/5/2018 | $ 312.00 | $ 312.00 | | | $ 44.44 | $ 33.33 | | $ 1,533.77 |
| | | | $ 5,538.00 | $ 5,538.00 | $ 5,000.00 | $ 5,000.00 | $ 480.71 | $ 965.67 | $ - | $ 27,782.48 |
| | | | | | | | | | | |
| Santiago Hernandez | 12/1/2014 | 12/30/2014 | $ 192.00 | $ 192.00 | $ 5,000.00 | $ 5,000.00 | $ 235.72 | $ 75.43 | | $ 11,895.15 |
| | 12/31/2014 | 12/30/2015 | $ 2,730.00 | $ 2,730.00 | | | $ 3,775.03 | $ 939.56 | | $ 32,112.09 |
| | 12/31/2015 | 12/30/2016 | $ 2,808.00 | $ 2,808.00 | | | $ 300.23 | $ 713.34 | | $ 8,993.20 |
| | 12/31/2016 | 10/15/2017 | $ 2,706.00 | $ 2,706.00 | | | $ 161.47 | $ 468.91 | | $ 7,906.02 |
| | 12/31/2017 | 12/30/2017 | $ 264.00 | $ 264.00 | | | $ 11.15 | $ 32.37 | | $ 753.34 |
| | 12/31/2017 | 4/17/2018 | $ 1,170.00 | $ 1,170.00 | | | $ 155.23 | $ 123.55 | | $ 5,558.78 |
| | | | $ 9,870.00 | $ 9,870.00 | $ 5,000.00 | $ 5,000.00 | $ 4,638.82 | $ 2,353.16 | $ - | $ 67,218.57 |
| | | | | | | | | | | |
| | | | $ 15,408.00 | $ 15,408.00 | $ 10,000.00 | $ 10,000.00 | $ 5,119.53 | $ 3,318.84 | $ - | $ 95,001.06 |
| | | | | | | | | | | |
| | | | Filing Date | | 4/23/2018 | | | | | |
| | | | FLSA | | 4/23/2015 | | | | | |
| | | | NYLL | | 4/23/2012 | | | | | |
| | | | Amendment | | 4/9/2011 | | | | | |
| | | | Today | | 4/26/2019 | | | | | |